## Lamp v. Heyman, trading as Ambridge Auto Wrecking Company

*John A. Conte* of *Conte, Courtney, Tarasi & Price,* for plaintiff.

*Robert E. Kunselman* of *Reed, Sohn, Reed & Kunselman,* for defendants.

SALMON, J., February 16, 1974.—This case is before us on a preliminary objection by defendant in the nature of a demurrer.

Plaintiff was injured on September 1, 1967, when her vehicle was allegedly struck by defendant's vehicle. The accident occured in Beaver County where defendant has continued to maintain both his residence and place of business. On August 28, 1969, four days prior to the running of the two-year statute of limitations, plaintiff filed a praecipe for a writ of summons with instructions to "issue and hold." On June 4, 1970, 10 months later, plaintiff filed a praecipe for reissuance

of the original writ. Service was made on June 19, 1970. Defendant argues that a direction to the prothonotary to "issue and hold" a praecipe for a writ of summons nullifies plaintiff's action in filing the praecipe.

The Pennsylvania Supreme Court has said that filing a praecipe for a writ of summons "constitute[s] the 'commencement' of an action under Pa. R. C. P. 1007(1) sufficient to toll the statute of limitations": Ehrhardt v. Costello, 437 Pa. 556, 558 (1970). In Salay v. Braun, 427 Pa. 480, 484 (1967), the court said that "[T]he statute is tolled by the mere filing of a praecipe within the prescribed statutory time." The court added that the rationale for Pa. Rule of Civil Procedure 1007 which deems an action commenced when the praecipe is filed is to "free the plaintiff from the risk that the statute of limitations may bar him if he acts in time, but *someone else* fails to act in time." (Italics supplied.)

Our question then is: Given plaintiff's instructions to the prothonotary to "issue and hold" the writ, what effect have these instructions on the commencement of the action? Of paramount importance is the meaning of the word, "issue." In Guinto v. Philadelphia Fire & Marine Insurance Company, 21 D. & C. 573, 576 (1934), it was said that "a writ of summons is sued out or issued when in pursuance of a praecipe it has been prepared by the prothonotary, marked filed, indexed, and docketed, and given to an officer of the court or the sheriff or deputy sheriff for the purpose of having the same served." Citing Johns' Estate, 253 Pa. 532 (1916). Issuance of a writ then entails more than the mere production of a document within the prothonotary's office. It entails all the steps listed above, including *delivery to the sheriff* for the purpose of having it served. In the case at bar, however, "Plaintiff's

counsel wanted the issued Writ held by the Prothonotary and not to be taken to the Sheriff's Office—and it was also done." In effect, plaintiff, having filed her praecipe, sought to have issuance of the writ halted. In this, she succeeded; the writ was not issued.

In Bittler v. Rocco Bono Equipment Rentals, 38 D. & C. 2d 458 (1966), plaintiff filed a praecipe for a summons in trespass. At the time he filed the praecipe, plaintiff marked it "hold." This instruction was followed by the prothonotary and no writ was issued. The court held that the effect of this action was to make the praecipe a nullity, citing an earlier Mercer County case:

" 'However, when the plaintiff went further and notified the Prothonotary to hold the praecipe, in effect they *nullified* their action in filing it. In other words, while purporting to commence an action, they expressly prevented the commencement of it by simultaneously stopping and thereby *nullifying* the effect of their praecipe' ": Bittler v. Rocco, etc., supra, at page 461. (Emphasis in original.)

This language was cited and specifically approved by our Supreme Court in Peterson v. Philadelphia Suburban Transportation Co., 435 Pa. 232, 240 (1969).

Plaintiff seeks to distinguish Bittler and Peterson on grounds they involved only a hold order on the praecipe, whereas plaintiff's order to the prothonotary at the time of filing was to "issue and hold." We do not so understand the facts. In Peterson, the prothonotary actually "issued" that writ as we have used that term above. In other words, the sheriff actually received it. At this juncture, plaintiff ordered the sheriff to hold back service of the writ. Thus, because he ultimately failed to *reissue* the writ in time, plaintiff's writ died and he lost his right to keep the other party on the record as a named defendant. Therefore, Peterson does

not present our precise facts situation. Nevertheless, we deem it appropriate to quote the following language from the opinion of the Supreme Court by Mr. Justice Pomeroy, at page 239, 240, to wit:

"Turning now to the merits of that portion of the appeal which is properly before us, the question presented may be simply stated thus: When is a party defendant, named as such in a summons, not a party in fact? The answer given by the lower court was, when he has not been served with the summons because of a 'hold' order given by the plaintiff to the sheriff. We agree.

"An action may be commenced by filing with the prothonotary a praecipe for a writ of summons. The writ must be served within thirty (30) days after issuance. Reissued writs must be served within thirty (30) days after reissuance. Pa. R.C.P. 1007, 1009, 1010(d). It is basic to our whole system of the trial of lawsuits that service of process be made, and timely made. Normally, in actions *in personam*, the service must be personal service or an authorized substitute therefor. The fundamental and indispensable nature of the service requirement permeates the decisional and statutory law of this Commonwealth, and needs no demonstration here."

No writ of summons ever left the prothonotary's office in the Bittler case. That case is closer on its facts to the instant case. We find the applicable principles to be the same.

Under the definition of the word "issue" given by our courts in reference to a writ of summons, plaintiff's order on his praecipe to the prothonotary to "issue and hold" has had, and was intended to have, the same result as Bittler's order to "hold." Plaintiff admits he did not wish to have the prothonotary forward the writ to the sheriff. This result was foreor-

dained by plaintiff's conjunctive order to "hold." Thus, plaintiff has issued the type of contradictory order to the prothonotary which brings us within the ambit of Bittler.

What then of Ehrhardt v. Costello and Salay v. Braun? To be sure, both cases stand for the proposition that Pa. R. C. P. 1007 means a suit is commenced when the praecipe for a writ of summons is filed. As Salay v. Braun states, this is to protect plaintiff when *he* acts in time but someone else does not. The rule does not exist to protect a plaintiff who *deliberately* acts to frustrate issuance and service of a writ. When plaintiff does this, we take it to mean he does not wish to commence his action but, on the contrary, has acted positively to frustrate the normal procedures of the law which would give notice to the defendant within 30 days or some reasonable length of time, that he has been sued.

Fairness and logic impel us to the same result. Plaintiff has perverted the defensive nature of the rule as explained in Salay v. Braun, supra, by wielding it as an offensive weapon. It is our view that plaintiff's use of the rule runs counter the whole raison d'être of the statute of limitations. Acceptance of plaintiff's approach to Rule 1007 not only strips the statute of limitations of its vitality, it raises mere form to an unwarranted preeminence over the spirit of the law.

In practical terms, this means that by filing his praecipe and then taking positive steps to see that it is not served, plaintiff may lull defendant into a sense of security and wait for adverse witnesses to fade from the scene while, in the meantime, he carefully assembles his own case. To extend the period beyond which this action may be brought without any reason, except plaintiff's desire to obtain some tactical advantage over his opponent, seems manifestly unfair.

It should also be noted that: "Beginning with the earliest history of the common law, it has always been the law that undue delay by plaintiff *after* a suit has been commenced, is grounds for the court to deny recovery by ordering a non pros of the action" (referring in a footnote to 3 Blackstone's Commentaries (1768) 295-296): Gallagher v. Jewish Hospital, 425 Pa. 112, 114 (1967) (Italics supplied.) In Margolis v. Blecher, 364 Pa. 234, 236 (1950), the court called it "well settled that the entry of judgment of non pros, for laches or want of prosecution is discretionary with the court."

We are not called upon to decide whether the delay in service of nine months and 22 days perpetrated by plaintiff in obtaining service on a long-established place of business in Beaver County would be sufficient to warrant exercise of the court's common-law power to enter an order of non pros. It would appear that that avenue of attack was open to this defendant as an alternate course.

We are aware of Belas v. Melanovich, 31 Beaver 108 (1971), but we think it inapposite because, there, the court found that the writ had actually been issued. Here, it was not and this was due to plaintiff's own machinations. We, therefore, hold that the action was not filed within two years of the date of the accident, plaintiff's summons of August 28, 1969, being a nullity. Defendant's demurrer will be sustained.

## ORDER

And now, February 16, 1974, for the reasons set forth in the foregoing opinion, defendant's preliminary objection in the nature of a demurrer is sustained and judgment entered for defendant.